UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Complete Business Solutions, Inc.,
a Michigan corporation,

Civ. File No. 00-1941 (PAM/SRN)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Robert Schaeffer and
Abacus Group, LLC, a Minnesota
limited liability company,

Defendant.

---

This matter is before the Court upon Plaintiff's Motion for a Temporary Restraining Order and For a Preliminary Injunction. For the reasons stated below, the Motion is denied.

**BACKGROUND**

On August 15, 1995, Defendant Robert J. Schaeffer ("Schaeffer") began employment as a software applications consultant with C.W. Costello & Associates, Inc. ("CWC"), a predecessor of Plaintiff Complete Business Solutions, Inc. ("CBSI"). (See Schaeffer Aff. ¶ 2.) Schaeffer actually signed his offer letter one day later, on August 16, 1995. (See id. ¶ 4.) The offer letter set forth, among other things, his compensation, vacation, medical benefits, insurance benefits, pension benefit eligibility. (See id. Ex. A.) Importantly, it included no information about any noncompetition agreement or other restrictive covenant that Schaeffer would be required to sign.

FILED AUG 23 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Four days later, on August 20, 1995, Schaeffer did sign such a noncompetition agreement. (See Pl.'s Br. Ex. A.) That agreement provides:

> For a period of one year subsequent to any termination of my employment with CWC, irrespective of cause, I will not:
>
> (i) act as a consultant to or otherwise perform services for remuneration for any CWC client (including, for this purpose, any subsidiary of the affiliate for such client) for which I performed services as an CWC employee or independent subcontractor during the one year period immediately prior to any such termination.
>
> (ii) solicit or advise any employee or subcontractor or agent of CWC to terminate his or her employment or relationship with CWC or to accept any employment (directly or indirectly) or other arrangement for providing services for any other person.
>
> For the purpose of this agreement, C.W. Costello & Associates, Inc. shall include its subsidiaries and affiliates, any predecessor corporation and their respective successors and assigns.

(See id. ¶¶ 5-6.) In February 1997, CWC placed Schaeffer on-site with its client, Metris Companies ("Metris"), where he provided information technology services. (See Compl. ¶ 11.) In January 1998, CBSI purchased CWC. (See id. ¶ 10.) Schaeffer continued to work for CBSI at Metris. (See id. ¶ 12.) Schaeffer left CBSI on July 28, 2000, and began working for Defendant Abacus Group, LLC ("Abacus") on July 31, 2000, remaining on-site at Metris and providing the same services that he did when employed by CBSI. (See id.)

In response, CBSI filed the present lawsuit, which includes five counts. Count 1 alleges that Schaeffer breached the noncompetition agreement. Count 2 alleges that

Schaeffer breached nondisclosure and non-use provisions of the same agreement. Count 3 alleges that Abacus tortiously interfered with Schaeffer's noncompetition agreement with CBSI. Count 4 alleges that Schaeffer and Abacus tortiously interfered with CBSI's business relations and prospective business relations with its clients, including Metris. Count 5 alleges that Schaeffer and Abacus currently possess CBSI's proprietary information in violation of the Minnesota Uniform Trade Secrets Act. See Minn. Stat. § 325C.01, et. seq.

Presently before the Court is CBSI's Motion for a Temporary Restraining Order and Preliminary Injunction enjoining Schaeffer from working with Metris, restraining Schaeffer and Abacus from disclosing CBSI's proprietary information, and returning such proprietary information to CBSI. Both parties being present, the Court converts this Motion for a Temporary Restraining Order and Preliminary Injunction to a Motion for Preliminary Injunction. See Fed. R. Civ. P. 65.

## DISCUSSION

### A. Standard

To obtain preliminary injunctive relief, CBSI must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if preliminary relief is not granted; (3) the balance of hardships weighs in its favor; and (4) the public interest favors granting preliminary injunctive relief. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Because a preliminary injunction is an extraordinary remedy, the moving party has the burden of establishing its necessity. See In re Travel Comm'n Antitrust Litig., 898 F. Supp. 685, 689 (D. Minn. 1995).

**B. Breach of Noncompetition Agreement**

Minnesota law disfavors restrictive covenants in employment agreements. See National Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982). Noncompetition agreements are carefully scrutinized because they are agreements in partial restraint of trade. See id. "Where such a covenant is not ancillary to the initial oral employment contract, it can be sustained only if supported by independent consideration." Id. The independent consideration requirement "reflects the fact that employers and employees have unequal bargaining power. When the employer fails to inform prospective employees of the noncompetition agreement until after they have accepted jobs, the employer takes undue advantage of the inequality between the parties." Sanborn Mfg. Co. v. Currie, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993). "Minnesota courts evaluate the facts of each case to determine the adequacy of consideration for noncompetition agreements entered into during employment relationships. Continuation of employment can be sufficient consideration if the agreement is [1] bargained for and [2] provides the employee with 'real advantages'." Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 265 (Minn. Ct. App. 1996) (citing Freeman v. Duluth Clinic, 334 N.W.2d 626, 630 (Minn. 1983)).

In Davies & Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 132-33 (Minn. 1980), the Minnesota Supreme Court found that continued employment of ten years constituted sufficient consideration for one employee where it advanced him to a position that would

have been unavailable had he not signed the agreement, and gave him sole responsibility for many of the employer's customers. However, for another employee that signed a noncompetition agreement 11 days after beginning employment, the agreement conferred no real advantages that would not have been available had he not signed it, hence the agreement was held invalid. See id. Similarly, other decisions indicate that it is an exceptional case where continued employment will be deemed to offer "real advantages" amounting to independent consideration sufficient to validate a noncompetition agreement signed after beginning employment. See, e.g., Midwest Sports, 552 N.W.2d at 265-66; National Recruiters, 323 N.W.2d at 741; Sanborn, 500 N.W.2d at 164; Jostens v. National Computer Sys., Inc., 318 N.W.2d 691, 703-04 (Minn. 1982); but see, e.g., Ecolab, Inc. v. Ford, No. C0-94-1207, 1994 WL 510121, at *3 (Minn. Ct. App. Sept. 20, 1994) (validating noncompete based on 21 years of continued employment, advancement to high-level positions, and responsibility for many customers); Millard v. Electronic Cable Specialists, 790 F. Supp. 857, 858 (D. Minn. 1992) (validating noncompete where sales agent was eventually given responsibility for employer's entire commercial aviation sales efforts); Medtronic v. Gibbons, 527 F. Supp. 1085, 1088-89 (D. Minn. 1981) (upholding noncompete where technical services manager in Minnesota was promoted to sales force and given a sales territory in California).

Here, the noncompetition agreement was entered into on August 20, 1995, five days after Schaeffer began employment with CWC on August 15, 1995, and four days after the

parties memorialized the terms of their employment relationship through Schaeffer's signing of the offer letter on August 16, 1995. That letter does not mention that Schaeffer would subsequently be required to enter into a noncompetition agreement. (See Schaeffer Aff. Ex. A.) Moreover, Mr. Schaeffer has testified that "[a]t no time before I signed the letter on August 16, 1995 had . . . anyone . . . at [CWC] ever told me about a [noncompete agreement] or that I would be asked to sign any agreement containing terms and conditions of the type contained in any such agreement." (Schaeffer Aff. ¶ 4.) Therefore, the Court cannot conclude that the noncompetition agreement was entered into at the inception of the employment relationship.[1] Consequently, the noncompetition agreement must be supported by independent consideration.

Because the record shows no direct evidence that Schaeffer received distinct and separate consideration for signing the noncompetition agreement, the Court must consider whether Schaeffer's continued employment with CWC and CBSI constituted independent consideration. See Davies, 298 N.W.2d at 132-33. For continued employment to constitute independent consideration for a noncompetition agreement, the agreement must be "bargained for" and the continued employment must have provided Schaeffer with "real

[1] It is of no consequence that Schaeffer also did not sign other employment documents (e.g., CWC's drug policy, INS Form I-9, IRS Form W-4, and acknowledgment of receipt of employee benefits plan booklet) until August 20, 1995. (See Kaiser Aff. Ex. A.) Unlike a noncompetition agreement, these documents are not considered disfavored partial restraints on trade. Consequently, they need not be signed at the inception of the employment relationship, and certainly do not define such an inception.

advantages." See Midwest Sports, 552 N.W.2d at 265. CBSI has submitted no evidence of either. Although Schaeffer was employed for five years, received a salary increase from $29,000 to $64,250, and was promoted from programmer to senior systems analyst, CBSI has not met its burden of establishing that the noncompetition agreement transformed his job responsibilities, client contacts, or the nature of his work so significantly as to constitute independent consideration as contemplated by Davies. (See Kaiser Aff. ¶ 6.) Moreover, CBSI's reliance on Overholt Crop Ins. Serv. Co., Inc. v. Bredeson, 437 N.W.2d 698, 702 (Minn. Ct. App. 1989) is misplaced because, unlike the present case, Overholt's noncompetition agreement was entered into at the inception of the employment relationship.

In sum, the Court finds that Schaeffer did not enter into the noncompetition agreement at the inception of his employment with CWC, his continued employment likely did not constitute independent consideration for the noncompetition agreement and, consequently, the noncompetition provisions of that agreement are likely invalid. Accordingly, CBSI is unlikely to succeed on the merits of its claim of breach of the noncompetition provisions as required by the first factor of Dataphase.

CBSI has also not established the second Dataphase factor, i.e., a threat of irreparable harm by Schaeffer's continued employment by Abacus at Metris. CBSI merely argues that "Schaeffer and Abacus can be presumed to be working vigorously to divert other CBSI customers from CBSI to Abacus." (Pl.'s Br. at 8.) However, CBSI has submitted no evidence in support of this assumption. No evidence indicates that monetary damages would

be insufficient to remunerate CBSI's lost profits due to Schaeffer's employment with Abacus rather than CBSI.

Moreover, the third Dataphase factor, balancing of the parties' individual hardships, favors neither party. CBSI has provided no evidence that Schaeffer's employment for Abacus would harm CBSI beyond the profits it would lose from its own employment of Schaeffer, or even that it would lose such profits by being unable to fill Schaeffer's position. Moreover, because the agreement only precludes Schaeffer from working for those clients for which he performed services for CBSI within the year before leaving CBSI (i.e., the agreement only prevents Schaeffer from working at Metris), Schaeffer could easily find employment elsewhere.

Similarly, the fourth Dataphase factor, weighing public interest favors neither party. The public policy against partial restraints of trade is offset by the public policy allowing employers to protect themselves against usurpation of their trade by their former employees.

In sum, the Dataphase factors weigh most heavily against providing CBSI its requested injunctive relief for breach of the noncompetition agreement.

**C. Tortious Interference with Noncompetition Agreement**

CBSI's claim that Abacus tortiously interfered with its noncompetition agreement with CBSI is predicated upon the validity of the agreement. As discussed above, however, there exists a substantial likelihood that the noncompetition agreement is invalid for lack of consideration. Consequently, injunctive relief is also inappropriate for this claim.

**D. Breach of Nondisclosure and Nonuse Provisions of the Agreement**

CBSI's noncompetition agreement with Schaeffer also includes a confidentiality provision stating, "I will not use or disclose any confidential or proprietary information of C.W. Costello & Associates, Inc. (CWC) or any client of CWC, which is acquired by me in the course of my employment." (Pl.'s Br. Ex. A ¶ 1.) Unlike the noncompetition provisions, this confidentiality clause does not constitute a disfavored restraint on trade that must either be entered into at the inception of employment or be supported by independent consideration. However, CBSI has not provided any evidence to support its claim for breach of the confidentiality clause. CBSI merely alleges that "Schaeffer's work at Metris, on behalf of his new employer, Abacus, evidences his disclosure and/or use of CBSI's confidential business information, i.e., its prospect/key account list and rate information, among other information, and breach of his non-compete and non-use obligations under the Agreement." (Compl. ¶ 39.) This conclusory allegation is not sufficient evidence to support CBSI's claim that Schaeffer has actually disclosed the prospect list and rate information to Abacus or anyone else. Although, Schaeffer had access to billing rate information, no evidence indicates that he ever possessed such information. (See Schaeffer Aff. ¶ 21.) Moreover, although Schaeffer admits to having a prospect list and phone list in his possession, no evidence indicates that he has ever disclosed them. (See id. ¶ 9.) Furthermore, because the parties agreed at oral argument, through their representations to the Court, that Schaeffer

would immediately return the prospect list and phone list to CBSI, injunctive relief is unnecessary as moot. (See id.)

In sum, the Court finds that CBSI has failed to submit sufficient evidence to meet its burden of establishing likelihood of success and irreparable harm regarding breach of the confidentiality provisions of the agreement and violation of the Trade Secrets Act. Because Schaeffer has agreed to immediately return the only confidential information that the evidence indicates he possesses, injunctive relief is unnecessary and inappropriate for this claim.

### E. Other Claims

Although CBSI's Complaint includes claims for tortious interference with business relations and prospective business relations and violation of Minnesota's Uniform Trade Secrets Act, CBSI apparently does not rely on these claims in seeking preliminary injunctive relief, because it has included no arguments in its brief relating to these claims.

## CONCLUSION

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court concludes that a preliminary injunction is not appropriate in this case. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Clerk Doc. No. 2) is **CONVERTED** to a Motion for Preliminary Injunction, which is **DENIED**; and

2. Pursuant to the parties' stipulation and representation to the Court, Defendant Robert Schaeffer shall immediately return the prospect list and phone list in his possession to Plaintiff Complete Business Solutions, Inc.

Dated: August 23, 2000

Paul A. Magnuson
United States District Court Judge